# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT FLECK,

        *Plaintiff*,

    v.

DEPARTMENT OF VETERANS AFFAIRS,
OFFICE OF THE INSPECTOR GENERAL,

        *Defendant.*

Civil Action No. 18-1452 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Fleck's complaint arises from the publication of a report based on an investigation that Defendant Department of Veterans Affairs, Office of the Inspector General ("VA OIG" or "OIG") conducted into his alleged involvement in hiring his wife for a new position in the Department of Legal Affairs, Office of General Counsel, where he also worked. Dkt. 12 at 1–2, 10 (Am. Compl. ¶¶ 2, 66). He alleges that the VA OIG violated two provisions of the Privacy Act—5 U.S.C. §§ 552a(g)(1)(C) & (D)—by maintaining and publishing inaccurate information about him, which injured his reputation, caused him emotional harm, and prevented him from obtaining a higher-paying job. *Id.* at 17–18 (Am. Compl. ¶¶ 113–29). The VA OIG moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). Dkt. 14 at 1. It argues that two exceptions to the Privacy Act bar Plaintiff's claims, and it asserts that Plaintiff has not pleaded facts sufficient to state claims under the Act. *Id.* at 5–15. The Court is unpersuaded by Defendant's threshold challenges and will therefore deny its motion to dismiss.

# I. BACKGROUND

## A.    Factual Background

For purposes of the pending motion, the Court must accept the non-conclusory factual allegations set forth in the complaint as true and will also consider the report of investigation, which is referenced and for which a link is provided in the complaint. *See Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 334–35 (D.D.C. 2016).

Plaintiff Robert Fleck is employed as Chief Counsel of the Procurement Law Group in the Office of General Counsel ("OGC") at the Department of Veterans Affairs ("VA"). Dkt. 12 at 3 (Am. Compl. ¶ 8). This is a Senior Executive Service position, and Plaintiff is currently compensated "at the tier two pay grade." *Id.* Plaintiff previously worked as an attorney at the United States Department of the Army ("Army"), where he "won an award for his leadership and legal advice known as the Meritorious Service Award," along with other awards and commendations. *Id.* (Am. Compl. ¶¶ 10–11). Plaintiff's wife, Kristina Wiercinski, is also an attorney and currently works in the OGC's Court of Appeals Law Group. *Id.* (Am. Compl. ¶ 13). Before that, Wiercinski worked as an e-discovery attorney in the OGC's Real Property Law Group, and before that, she worked as an attorney alongside Plaintiff at the Army. *Id.* at 3–4 (Am. Compl. ¶¶ 13–14).

Plaintiff alleges that, in the Spring of 2016, "multiple senior counsel within [the] OGC's acquisition groups" decided to create an e-discovery attorney position to meet the groups' needs. *Id.* at 4 (Am. Compl. ¶¶ 15–16). During a conference call, OGC Procurement Law Group Deputy Counsel Vincent Buonocore recommended Wiercinski to Deputy General Counsel Richard Hipolit for the new position. *Id.* (Am. Compl. ¶ 17). Buonocore had supervised Wiercinski when she worked at Army and was therefore "very familiar with her work and

qualifications." *Id.* Plaintiff alleges that, although he participated in this conference call, he "did not recommend, promote or otherwise discuss . . . Wiercinski as a candidate for the position." *Id.* (Am. Compl. ¶ 18). Hipolit, Plaintiff's supervisor, later asked Plaintiff to send him Wiercinski's resume, which Plaintiff did on June 17, 2016. *Id.* (Am. Compl. ¶¶ 19–20). Plaintiff "recused himself from any discussions regarding hiring for the e-discovery attorney position once he learned" that Wiercinski was a candidate, but some of his colleagues spoke to him about her candidacy and the hiring process and copied him on emails pertaining to those subjects. *Id.* at 5 (Am. Compl. ¶¶ 22–23).

The OGC posted the position opening on August 12, 2016, and Wiercinski formally applied six days later. *Id.* (Am. Compl. ¶¶ 25–26). A Best Qualified panel of three Real Property Law Group employees was convened to select a candidate for the position; Plaintiff was not involved in this process. *Id.* (Am. Compl. ¶¶ 27–28). Plaintiff asserts that "at least one member of the Best Qualified panel considered . . . Wiercinski to be . . . far and away the best candidate," and all three evaluated Wiercinski as "Exceptional." *Id.* (Am. Compl. ¶¶ 29–30). The panel recommended to the Chief Counsel of the Real Property Law Group that he select Wiercinski for the position. *Id.* at 6 (Am. Compl. ¶ 35).

Plaintiff alleges that, "[a]round this same time, . . . Wiercinski had also applied for and was in consideration for other openings within the VA's Information Law Group" and that, accordingly, the Chief Counsel of the Real Property Law Group communicated to Wiercinski her selection for the e-discovery position by telephone in mid-September 2016, so that she would not accept another job offer. *Id.* at 6 (Am. Compl. ¶¶ 34, 36). Wiercinski accepted the e-discovery position and then informed Plaintiff of her acceptance of the offer. *Id.* at 6–7 (Am. Compl. ¶¶ 37, 39).

Plaintiff alleges that, "on September 30, 2016, [he] forwarded [his wife] an e-mail initially sent to him on May 5, 2016 listing the VA's e-discovery issues," which he characterizes as "helpful background information for [her] as she prepared for her new role." *Id.* at 7 (Am. Compl. ¶ 40). On October 4, 2016, Wiercinski was "officially selected for the position," and "Wiercinski received her official offer letter on October 5, 2016." *Id.* (Am. Compl. ¶¶ 41–42). She began work in the new position on January 8, 2017 and "has performed her job well, winning . . . awards." *Id.* (Am. Compl. ¶¶ 43–45).

Plaintiff alleges that, in early- to mid-2017, the OIG initiated an investigation into his conduct in the course of the hiring process and Wiercinski's selection for the e-discovery role. *Id.* (Am. Compl. ¶ 46). He alleges that the OIG conducted multiple interviews as part of the investigation. *Id.* at 7–8 (Am. Compl. ¶ 46–49). He asserts that four of his colleagues who were interviewed informed the OIG investigators that Plaintiff "had no participation or influence in the hiring of . . . Wiercinski, and that [she] was independently rated the best qualified candidate." *Id.* at 8 (Am. Compl. ¶ 51). Plaintiff alleges that the OIG investigators ignored evidence that cast him and his behavior in a favorable light and, instead, "undertook questionable interview tactics" to elicit unfavorable evidence. *Id.* at 8–9 (Am. Compl. ¶¶ 53–57). Plaintiff also alleges that the OIG investigators failed to interview Buonocore, despite the fact that multiple witnesses informed them that it was Buonocore who had first recommended Wiercinski for the position. *Id.* at 9 (Am. Compl. ¶¶ 61–62). In September 2017, the OIG investigators interviewed both Plaintiff and Wiercinski; Plaintiff asserts that they both "provided thorough and truthful responses." *Id.* (Am. Compl. ¶ 60).

The OIG produced a report regarding Plaintiff's conduct, which it shared with the VA Deputy Secretary and the OGC. *Id.* at 11 (Am. Compl. ¶¶ 74, 77). Plaintiff alleges that this

"report's finding and conclusions were based on purposefully incomplete and inaccurate information." *Id.* at 10 (Am. Compl. ¶ 69). He further alleges that the report "intentionally omitted . . . interview testimony[, such as that of Benjamin Diliberto,] and all other exculpatory evidence and statements favorable to [him]," including any mention of Buonocore or his role in recommending Wiercinski. *Id.* (Am. Compl. ¶¶ 70–71). The report recommended that the VA Deputy Secretary, the OGC, and Human Resources should decide what administrative action to take against Fleck and Wiercinski, how much salary to claw back from Wiercinski, and whether Wiercinski should remain at the same pay grade. It also recommended that the VA Deputy Secretary and the VA Designated Agency Ethics Official ensure that Plaintiff's department receive appropriate ethics training. *Id.* at 11 (Am. Compl. ¶ 73). Plaintiff alleges that the OIG intentionally failed to provide the VA Deputy Secretary with the underlying investigatory materials and only provided the OGC with select documents, which he claims were "cherry picked by [the] OIG to include only the most unfavorable documents and testimony from the investigation." *Id.* at 11–12 (Am. Compl. ¶¶ 74–81).

On February 9, 2018, the VA Deputy Secretary informed the OIG that he had reviewed its report, agreed with its findings, and was taking steps in line with its recommendations. *Id.* at 11 (Am. Compl. ¶ 75). "On March 23, 2018, the VA Deputy General Counsel of Legal Operations issued a proposal letter that cited [Plaintiff] on charges of conduct unbecoming and disclosing sensitive information,"[1] recommending his demotion. *Id.* at 12 (Am. Compl. ¶ 79). Plaintiff alleges that the "OIG had pressured the Deputy General Counsel of Legal Operations" to issue this letter. *Id.* (Am. Compl. ¶ 82). Plaintiff responded to this proposal letter, including

---

[1]  The Court presumes that Plaintiff refers to this document as a "proposal letter" because it proposed a factual finding concerning Plaintiff's conduct as well as specific consequences for his alleged behavior. *See* Dkt. 12 at 12 (Am. Compl. ¶ 79).

by offering additional evidence that he asserts was omitted from the initial report. *Id.* (Compl. ¶ 83). On April 13, 2018, James Byrne, the VA's General Counsel, issued a decision concluding that Plaintiff had not committed conduct unbecoming but that he had shared sensitive information with Wiercinski prior to her formal acceptance of the position. *Id.* (Am. Compl. ¶ 84).

The OIG also referred its findings that Plaintiff and Wiercinski had made false statements and that Plaintiff had a conflict of interest in the hiring process to the United States Attorney's Office, which declined to prosecute either Plaintiff or Wiercinski. *Id.* at 13 (Am. Compl. ¶ 88). On March 29, 2018, the OIG published its report, titled "Administrative Investigation of Conflict of Interest, Nepotism, and False Statements within the VA Office of General Counsel," on its website. *Id.* (Am. Compl. ¶ 92). The report received some attention in the press. *Id.* at 14 (Am. Compl. ¶ 97).

Plaintiff alleges that the report "irreparably damaged" his "professional reputation and career prospects." *Id.* (Am. Compl. ¶ 99). He asserts that he "applied for and received an interview for an attorney opening" with another government agency, which would have paid him more than his present job. *Id.* (Am. Compl. ¶ 100). Plaintiff interviewed for the position one week after the publication of the OIG report; he was informed the following day that he was no longer under consideration for the job. *Id.* at 16 (Am. Compl. ¶ 100).

**B.      Procedural History**

On June 20, 2018, Plaintiff filed a two-count complaint alleging violations of §§ 552a(g)(1)(C) & (D) of the Privacy Act. Dkt. 1. He filed an amended complaint on October 5, 2018. *See* Dkt. 14. Defendant moved to dismiss the amended complaint pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), Dkt. 14; Plaintiff opposed that motion, Dkt. 17;

Dkt. 18, and Defendant replied to Plaintiff's opposition, Dkt. 20.

## II. LEGAL STANDARD

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'" *Coon v. Wood*, 68 F. Supp. 3d 77, 81 (D.D.C. 2014) (quoting *Wood v.*

*Moss*, 572 U.S. 744, 757–58 (2014)).  The plaintiff must plead facts that "allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "The court assumes the truth of all well-pleaded factual

allegations . . . and construes reasonable inferences from those allegations in the plaintiff's favor,

but is not required to accept the plaintiff's legal conclusions as correct." *Sissel v. U.S. Dep't of*

*Health & Human Servs.*, 760 F.3d 1, 5 (D.C. Cir. 2014) (internal citation omitted).  The Court

may consider sources such as "documents incorporated [into] the complaint by reference, and

matters of which a court may take judicial notice" in deciding a 12(b)(6) motion to dismiss.

*Coon*, 68 F. Supp. 3d at 82 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2007)).

## III. ANALYSIS

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use

and dissemination of personal information contained in agency records." *Henke v. U.S. Dep't of*

*Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407

(D.C. Cir. 1984)).  It mandates that "[e]ach agency that maintains a system of

records . . .  maintain all records which are used by the agency in making any determination

about any individual with such accuracy, relevance, timeliness, and completeness as is

reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). If an agency fails to do so, and "consequently a determination is made which is adverse to the individual," the individual may sue the agency in federal district court. *Id.* § 552a(g)(1)(C). Individuals may also sue if the agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." *Id.* § 552a(g)(1)(D). Plaintiffs may recover damages in such suits if they establish that the agency "acted in a manner which was intentional or willful." *Id.* § 552a(g)(4).

Section 552a(e)(6) of the Privacy Act provides that

[e]ach agency that maintains a system of records shall . . . prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

Subsection (b)(2), in turn, covers disclosures required under the Freedom of Information Act. 5 U.S.C. § 552a(b)(2).

In order to state a claim for damages under 5 U.S.C. §§ 552a(g)(1)(C) & (D), a plaintiff must allege that

(1) he has been aggrieved by an adverse determination; (2) [the defendant-agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (citations omitted); *see also Feldman v. CIA*, 797 F. Supp. 2d 29, 44 (D.D.C. 2011).

## A.    Count I

In Count I, Plaintiff alleges that the VA OIG violated 5 U.S.C. § 552a(g)(1)(C) by "fail[ing] to maintain [a] record concerning [him] with such accuracy, relevance, timeliness, and completeness as [was] necessary to assure fairness in" a determination based on that record, leading to an adverse determination against Plaintiff.  Dkt. 12 at 17 (Am. Compl. ¶ 115). Defendant moves to dismiss Count I on two grounds, arguing that (1) the record in question falls under an exemption from the Privacy Act's requirements; and (2) Plaintiff has failed to state a claim for damages because he has not alleged: (a) an adverse determination; (b) an actionable inaccuracy; (c) a causal connection; or (d) damages.  The Court addresses each argument in turn.

### 1.    *Exemption*

First, Defendant argues that Count I should be dismissed because "[t]he investigative report at issue is part of a system of records that the VA has exempted from the requirements of [§] 552a(e)(5) and from the civil remedy provisions of [§] 552a(g) pursuant to 5 U.S.C. § 552a(j)(2)."  Dkt. 14 at 5.  Defendant brings its motion under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  *Id.*  Plaintiff responds that the exemption is inapplicable.  Dkt. 17 at 16–18.

The Court begins by rejecting Defendant's argument that the Court is without subject-matter jurisdiction to consider Count I.  Defendant's contention that the exemption precludes Plaintiff's claim goes to the merits of the claim and not to the Court's jurisdiction to consider it. *See Mosby v. Hunt*, No. 10-5296, 2011 WL 3240492 at *1 (D.C. Cir. Jul. 6, 2011) (affirming the district court's dismissal because the plaintiff "could not sustain a claim under the Privacy Act" due to an exemption, not because the court lacked jurisdiction); *Doe v. Naval Air Station*, 768 F.2d 1229, 1230–33 (11th Cir. 1985) (per curiam) (analyzing a motion to dismiss based on the

applicability of certain Privacy Act exemptions based on whether the plaintiff had stated a claim, not whether the court had jurisdiction).

Turning to the exemption itself, "[t]he head of any agency may promulgate rules . . . to exempt any system of records within the agency" from several of the Privacy Act's requirements under certain circumstances.  5 U.S.C. § 552a(j)(2).  One such circumstance is where the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities,

*id.*, and

> consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports or informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

*Id.*

The Secretary of Veterans Affairs has promulgated several exemptions pursuant to 5 U.S.C. § 552a(j)(2), including exemptions for "Investigation Reports of Persons Allegedly Involved in Irregularities Concerning VA and Federal Laws, Regulations, Programs, etc.—VA (11 VA51)" and for "Inspector General Complaint Center Records—VA (66VA53)."  38 C.F.R. § 1.582(b)(1)(i) & (ii).  These exemptions, however, apply only "to the extent that information in those systems is subject to exemptions pursuant to 5 U.S.C. [§] 552a(j)(2) and (k)(2)."  *Id.* § 1.582(b)(2).  The D.C. Circuit has construed similar language in the FBI's exemption regulations

"to mean that, in order to be exempted, a particular record must fulfill the statutory criteria in whichever subsection of the Act on which the agency relies." *Lugo v. U.S. Dep't of Justice*, 214 F. Supp. 3d 32, 38 (D.D.C. 2016) (citing *Vymetalik v. FBI*, 785 F.2d 1090, 1094–96 (D.C. Cir. 1986); *Doe v. FBI*, 936 F.2d 1346, 1353 & n.8 (D.C. Cir. 1991)).

Plaintiff is therefore correct that the existence of an exemption promulgated by the Secretary that putatively covers the disputed records does not end this matter; in addition, the records at issue must fall within one of the statutorily-defined categories. Thus, to evaluate the applicability of the exemption, the Court will eventually need to determine whether the VA OIG is an "agency or component thereof which *performs as its principal function any activity pertaining to the enforcement of criminal laws*, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities." 5 U.S.C. § 552a(j)(2) (emphasis added); *see also Alexander v. IRS*, No. 86-0414, 1987 WL 13958, at *4 (D.D.C. Jun. 30, 1987) (noting that "only *one* of the principal functions of the [IRS] Inspection Service was the investigation of criminal conduct and that exemption (j)(2) was therefore not applicable"); *Anderson v. U.S. Dep't of Treasury*, 648 F.2d 1, 2 & n.2 (D.C. Cir. 1979) (per curiam) (noting the district court's rejection of an exemption claim on these grounds).

Now, however, is not the time to do so. An "exemption claim is an affirmative defense," which should typically "be raised in a responsive pleading, not in a motion to dismiss." *Bassiouni v. FBI*, No. 02 C 8918, 2003 WL 22227189, at *5 (N.D. Ill. Sept. 26, 2003) (citing Fed. R. Civ. P. 8(c) and refusing to decide the applicability of a Privacy Act exemption on a motion to dismiss); *see also 100Reporters LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115, 131 (D.D.C. 2017) (characterizing the assertion of the applicability of a FOIA exemption as an

affirmative defense).  Because this is not an instance in which "all the facts necessary to rule on [the] affirmative defense are alleged on the face of the complaint," ruling on the defense on a motion to dismiss would be premature.  *Smith v. Treasury Inspector General for Tax Administration*, No. 11-2033, 2011 WL 6026040, at *3 & n.1 (D. Md. Dec. 1, 2011); *see also Lee v. FBI*, 172 F. Supp. 3d 304, 308 (D.D.C. 2016) (concluding that an exemption applied on a motion to dismiss or, in the alternative, for summary judgment, but relying on a government declaration in order to do so).  The parties dispute the factual question whether the VA OIG "performs as its principal function any activity pertaining to the enforcement of criminal laws," 5 U.S.C. § 552a(j)(2), and the Court cannot resolve that dispute on a motion to dismiss.

Accordingly, the Court will deny Defendant's motion to dismiss based on the claimed exemption.

### 2.  *Failure to state a claim*

Defendant also argues that Plaintiff has failed to state a plausible claim under the Privacy Act for four different reasons: (a) he has failed to plead an adverse agency determination; (b) he has not identified any actionable inaccuracy in the report; (c) he has not plausibly pleaded causation; and (d) he has failed to plead actual damages or lacks standing to pursue his claims. Dkt. 14 at 6–14.  The Court addresses each argument in turn.

### a.  Adverse agency determination

First, Defendant argues that Plaintiff has failed to plead the existence of an actionable adverse determination that resulted from the agency's challenged actions.  Dkt. 14 at 6–8. Plaintiff asserts that he suffered an adverse determination when he received a letter of warning and additional training and when "he was removed from consideration for another federal agency job because of the [r]eport."  Dkt. 17 at 25, 27.  An adverse determination occurs when a party is

denied "a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient." *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007) (quoting *Privacy Act Implementation: Guidelines and Responsibilities*, Office of Personnel Management, 40 Fed. Reg. 28,948, 28,969 (Jul. 9, 1975)); *see also Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 15 n.7 (D.D.C. 2018). A 14-day suspension, for example, constitutes an adverse determination, but "the mere issuance of a notice of proposed termination" that never occurs does not. *Lee*, 480 F. Supp. 2d at 210.

Plaintiff has not alleged facts that would support the conclusion that the issuance of the warning letter, standing alone, or the additional training requirement amounted to the denial of "a right, benefit, entitlement, or employment." *Id.* (quoting 40 Fed. Reg. at 28,969). He also alleges, however, that he was not hired for the position for which he applied at the other agency because of the report and therefore lost the opportunity to earn a higher salary. Dkt. 14 at 14–15 (Am. Compl. ¶ 100). Plaintiff's allegation that this other agency refused to hire him for the position because of the report, if true, would constitute a "concrete, adverse determination." *McCready v. Nicholson*, 465 F.3d 1, 12 (D.C. Cir. 2006). Defendant has not argued that the other agency's failure to hire Plaintiff cannot serve as a qualifying adverse agency action because it was taken by an agency distinct from Defendant, and the Court will therefore not address the merits of that argument here. *See* 40 Fed. Reg. at 28,969 ("An individual may bring an action under [5 U.S.C. § 552a(g)(1)(C)] only if it can be shown that the deficiency in the record resulted in an adverse determination *by the agency which maintained the record*, on the basis of the record." (emphasis added)). Accordingly, at least for now, the Court must conclude that Defendant's first challenge to the substance of Plaintiff's claim fails.

b.      Inaccuracies

Second, Defendant argues that the alleged inaccuracies with which Plaintiff takes issue are not factual statements but, rather, judgments and opinions, which are not actionable under the Privacy Act. Dkt. 14 at 8–9. Plaintiff responds that the report is factually incorrect and notes that he also challenges the report's completeness. Dkt. 17 at 20–25. In evaluating this argument, the Court considers the VA OIG's report itself, Department of Veterans Affairs Office of Inspector General, *Administrative Investigation of Conflict of Interest, Nepotism, and False Statements within the VA Office of General Counsel* (March 29, 2018), https://www.va.gov/oig/pubs/VAOIG-17-03324-123.pdf (last visited Jan. 3, 2020), which Plaintiff incorporates by reference in his complaint, Dkt. 12 at 1–2 (Compl. ¶ 2), and which Defendant discusses at length in its motion to dismiss, Dkt. 14 at 2 n.1, 10–11, 13–15. *See Coon*, 68 F. Supp. 3d at 82 (noting that the court may look to sources such as "documents incorporated [into] the complaint by reference, and matters of which a court may take judicial notice" in deciding a 12(b)(6) motion to dismiss" (quoting *Tellabs*, 551 U.S. at 322)).

"[T]he Privacy Act 'allows for correction of facts but not correction of opinions or judgments.'" *McCready*, 465 F.3d at 19 (citation omitted). The D.C. Circuit has, on one hand, characterized an "appraisal of [the plaintiff's] relative [job] performance in a variety of categories during the covered period, as well as [a] recommendation regarding promotion," as "a classic statement of an author's subjective judgment," and therefore not actionable under the Privacy Act. *Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007); *see also White v. Office of Pers. Mgmt.*, 787 F.2d 660, 663 (D.C. Cir. 1986). On the other, it has treated an agency's determination whether a plaintiff was present at a meeting as a question of "'fact' capable of verification." *McCready*, 465 F.3d at 19. Even "findings [that] require[] the weighing of

14

conflicting evidence" may still qualify as factual findings that are not shielded from Privacy Act review as judgments or opinions. *Geren*, 480 F. Supp. 2d at 207–08.

At this stage of the proceeding, the Court must "draw all inferences in favor of the [Plaintiff]." *Maxwell v. Snow*, 409 F.3d 354, 356 (D.C. Cir. 2005) (quoting *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)). Applying that standard and accepting Plaintiff's allegations as true, there is ample basis to conclude that the report contained factual inaccuracies or omitted significant information rendering it factually inaccurate or materially incomplete. Although the report's determinations that Plaintiff (1) advocated for his wife's selection, (2) shared confidential information with his wife before she was selected for the position, and (3) lied to investigators, Department of Veterans Affairs Office of Inspector General, *Administrative Investigation of Conflict of Interest, Nepotism, and False Statements within the VA Office of General Counsel* at 13–14, are "findings [that] required the weighing of conflicting evidence," they are nonetheless factual in nature and do not merely represent opinions of the investigators, *see Geren*, 480 F. Supp. 2d at 207–08. In those respects, the report details the investigators' account of what occurred; it is not subjective in the same way as is an "appraisal of [the plaintiff's] relative [job] performance in a variety of categories" or a "recommendation regarding promotion." *Mueller*, 485 F.3d at 1197.

Plaintiff plausibly alleges that the report's conclusions that he advocated for Wiercinski as a candidate and was involved in the selection process, shared confidential information with her prior to her selection for the job, and lied when interviewed by investigators were inaccurate.[2] *See Feldman*, 797 F. Supp. 2d at 46 (requiring that a complaint indicate "specific

_____

[2] The Court notes that the report does acknowledge Plaintiff's side of the story in several places and therefore does not present the same inaccuracy or incompleteness concerns as would "a

15

facts contained in the [report] that are alleged to be inaccurate or erroneous"). The Plaintiff

alleges, for example, that he recused himself from the hiring process; did not advocate for his

wife; only shared confidential information with her once she had been selected; and did not lie to

investigators. At the pleading stage, the Court "must assume the truth of all well-pleaded

allegations." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). He also

plausibly alleges that the VA OIG intentionally excluded a substantial body of evidence that

contradicted its factual findings; that the report's authors cherry-picked interview content that

painted Plaintiff's conduct in the most negative light; and that they did not interview a key player

who would have exculpated Plaintiff. These allegations are sufficient at this stage of the

proceeding.

       c.   <u>Causation</u>

Third, Defendant argues that Plaintiff has failed to plead facts that could plausibly

support the conclusion that the VA OIG's publication of the report led to the other agency's

failure to hire him. Dkt. 14 at 10. At this stage of the proceeding, Plaintiff must simply plead "a

'causal connection' between the agency violation and the adverse effect.'" *Lugo*, 214 F. Supp.

3d at 41 (quoting *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 49 (D.D.C. 2009)); *see also*

*Deters*, 85 F.3d at 657 (requiring that "reliance on the inaccurate records [be] the proximate

cause of the adverse determination"). He has done so. He alleges that he was not hired for the

new job because of the report's inaccuracies or incompleteness. The timeline of the publication

---

record embracing only one side's story." *Deters*, 85 F.3d at 658–59 (quoting *Doe*, 821 F.2d at
700); *see also Feldman*, 797 F. Supp. 2d at 47 (noting that the report in question included both
the agents' and the plaintiff's accounts of what had been said during an interview). But Plaintiff
alleges that the report is incomplete because it often leaves his contradictory account standing
alone and excludes other witnesses' corroborating interviews.

of the report, Plaintiff's job application, and his interview is not entirely clear from the face of the amended complaint. Defendant reads Plaintiff's complaint to allege that he had applied for the other agency position *after* the publication of the report and argues that the report could not have caused the second agency to decide not to hire him because the report was available when it decided to interview Plaintiff. In response, Plaintiff asserts: "The fact that [he] was invited for an interview *prior to the issuance of the [r]eport* confirms his qualification and suitability." Dkt. 17 at 30 (emphasis added). Plaintiff argues that the intervening publication of the report and the agency's subsequent failure to hire him supports an inference of causation. *Id.*

Drawing all "reasonable inferences from [the amended complaint's] allegations in the plaintiff's favor," the Court concludes that Plaintiff has sufficiently alleged that the report caused the second agency to fail to hire him. *Sissel*, 760 F.3d at 4. The close proximity of the publication of the report to that agency's failure to hire him could support an inference of causation. See *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (stating that close temporal proximity may support an inference of causation in the context of retaliation claims). The Court's conclusion, moreover, does not turn on the outcome of the parties' timeline dispute. Even if the report was published prior to the second agency's invitation for an interview, it is plausible that the second agency learned of the report only after making that invitation but decided not to hire him after seeing the report. *See Bartel*, 725 F.2d at 1406 (actionable adverse determination where Plaintiff was asked to interview following the dissemination of unfavorable reports and then informed at the interview that he would not be hired).

        d.     <u>Pecuniary damages</u>

Fourth, Defendant argues that Plaintiff has failed to allege facts that would support the conclusion that he suffered pecuniary damages as a result of the alleged inaccuracies and omissions of the report.  Dkt. 14 at 12–14.  Under the Privacy Act, plaintiffs may recover "'actual damages sustained by the individual as a result of' the agency's failure to properly maintain the record."  *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1097 (D.C. Cir. 2009) (quoting 5 U.S.C. § 552a(g)(4)).  In *Federal Aviation Administration v. Cooper*, 566 U.S. 284 (2012), the Supreme Court held that actual damages under the Privacy Act are limited to pecuniary harms and do not extend to recoveries for "loss of reputation, shame, mortification, injury to the feelings," etc.  *Id.* at 295–97 (quoting 1 D. Haggard, Cooley on Torts § 164 (4th ed. 1932)).  The Court concludes that Plaintiff's allegation that he was denied a position that would have paid him more than his present job, although lacking in detail, suffices at the pleading stage; he has plausibly alleged both a necessary element of his claim and that he has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## B.    **Count II**

Count II alleges that Defendant violated 5 U.S.C. § 552a(g)(1)(D) by publicly disseminating the report after failing to "make reasonable efforts to assure that [it was] accurate, complete, timely, and relevant for agency purposes," as is required by 5 U.S.C. § 552a(e)(6), thereby harming Plaintiff.  Defendant challenges Count II on several grounds.  First, it reasserts its arguments, addressed above, that Plaintiff has failed to state a claim because he has not alleged an adverse determination, an actionable inaccuracy, a causal connection, or damages. Second, Defendant argues that, because the VA OIG must post its reports on its public website, it is exempt from actions under 5 U.S.C. § 552a(b)(2) based on the publication of such reports.

Third, Defendant asserts that Plaintiff has not alleged facts that would plausibly support the inference that the agency failed to "make reasonable efforts to assure that [the] record[] [was] accurate." 5 U.S.C. § 552a(e)(6). The Court is unpersuaded.

      1.     *Failure to state a claim*

The Court rejects Defendant's challenges to Count II's pleading of an adverse determination, an actionable inaccuracy, a causal connection, and pecuniary damages for the reasons explained above.

      2.     *FOIA exception*

When the material at issue is released pursuant to a FOIA request, the Privacy Act's normal prohibition on disseminating records without "mak[ing] reasonable efforts to assure that [they] are accurate, complete, timely, and relevant for agency purposes" is inoperative. 5 U.S.C. § 552a(e)(6). That exception, however, comes with its own proviso. In *Bartel v. Federal Aviation Administration*, the D.C. Circuit concluded that, "[o]nly when the agency is faced with a FOIA request for information that is not within a FOIA exemption, and therefore has no discretion but to disclose the information, does the FOIA exception to the Privacy Act come into play." 725 F.2d at 1411–12.

Defendant asserts that, under 38 U.S.C. § 312(c)(1)(C), the VA OIG is statutorily "obligated to 'post the work product on the Internet website of the Inspector General' within '3 days after the work product is submitted in final form to the Secretary,'" Dkt. 14 at 15 (quoting 38 U.S.C. § 312(c)(1)(C)), and that, accordingly, "the record at issue here constitutes a record that would be required to be released under FOIA," *id.* But Defendant does not develop any connection between 38 U.S.C. § 312(c)(1)(C)'s mandate and FOIA, address *Bartel*'s requirement that the agency be "faced with a FOIA request for information" in order for the FOIA exception

to the Privacy Act to "come into play," 725 F.2d at 1411–12, or cite any authority establishing the relevance of 38 U.S.C. § 312(c)(1)(C) to the Privacy Act's FOIA exception. And Defendant does not explain what impact, if any, 38 U.S.C. § 312(c)(2)'s direction that "[n]othing in this subsection shall be construed to authorize the public disclosure of information that is specifically prohibited from disclosure by any other provision of law" might have on its argument. To be sure, *Bartel* also mentions another "possible [Privacy Act] exception . . . for information that is traditionally released by an agency to the public without a[] FOIA request," but the D.C. Circuit declined to decide "whether such an exception is proper, or if so what its exact scope may be." *Bartel*, 725 F.2d at 1413; *see also Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 42–44 (D.D.C. 2004) (discussing such an exception). Because Defendant does not explain how 38 U.S.C. § 312(c)(1)(C) satisfies the FOIA exemption to the Privacy Act and does not develop the "possible" argument left open in *Bartel*, the Court will not venture into that territory alone. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of the Court to research and construct the legal arguments available to the parties." (citation omitted)). The Court will therefore deny Defendant's motion to dismiss on the ground of a FOIA exception.

> 3.     *Reasonable efforts to ensure accuracy*

Finally, Defendant argues—in two sentences—that Plaintiff has not "allege[d] sufficient facts that the agency failed to 'make reasonable efforts to assure that [the report was] accurate' as required by 5 U.S.C. § 552a(e)(6). Dkt. 14 at 16. Defendant provides no legal analysis addressing what constitutes a reasonable effort to ensure accuracy or why Plaintiff's allegations that the VA OIG ignored specific exculpatory evidence does not suffice to state a claim. The Court, accordingly, will not consider this unsupported contention.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Dkt. 14, is hereby **DENIED**.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  January 3, 2020