**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ROBERT M. FLECK,

        *Plaintiff*,

    v.

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF THE INSPECTOR GENERAL,

        *Defendant*.

Civil Action No. 18-1452 (RDM)

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

      In this Privacy Act case, Plaintiff Robert M. Fleck, an attorney at the Department of Veterans Affairs ("VA"), challenges the Office of the Inspector General ("OIG") of the Department of Veterans Affairs' dissemination of an investigative report concerning Fleck's alleged involvement in the VA's hiring of his wife. *See* Dkt. 31 (2d Am. Compl.). In *Fleck v. Department of Veterans Affairs Office of the Inspector General*, 596 F. Supp. 3d 24 (D.D.C. 2022), the Court granted in part and denied in part the OIG's motion for summary judgment on Fleck's claims. But it left the door open for Fleck to move for reconsideration on one issue: whether the alleged Privacy Act violation on which the Court denied summary judgment to the OIG caused Fleck to incur damages in the form of legal fees he paid to defend himself against a whistleblower complaint that he contends was prompted by the OIG's release of the report. *Id.* at 56. He has now done so, Dkt. 76 (sealed); Dkt. 78 (redacted), but he has failed to convince the Court that reconsideration is warranted. The Court, accordingly, will **DENY** his motion.

# I. BACKGROUND

## A.     Factual Background

The Court's previous opinion lays out the facts of this case at length, *Fleck*, 596 F. Supp. 3d at 30–38, and the Court will not recount them here except where relevant to the instant motion.  The basic setup is as follows: Fleck joined the Office of General Counsel ("OGC") of the Department of Veterans Affairs in May 2016.  *Id.* at 31.  Several months later, the office hired his wife, Kristina Wiercinski.  *Id.* at 33.  Allegations subsequently surfaced accusing Fleck of improperly promoting Wiercinski's candidacy.  *Id.*  The OIG launched an investigation in response, which culminated in a report issued in late March 2018.  *Id.*  The report concluded that Fleck had "engaged in nepotism and acts affecting his personal financial interest when he used his position to advocate for the employment of his wife."  *Id.* at 34 (quoting Dkt. 49-3 at 19–20 (OIG Report)).  The OGC proposed that Fleck be demoted as a consequence.  *Id.* at 35.  Fleck challenged his demotion and submitted multiple sworn statements from individuals involved in Wiercinski's hiring that were substantially exonerating.  *Id.* at 35–36.  His effort was largely successful: after reviewing his evidence, the VA General Counsel declined to demote Fleck, and the Deputy Secretary of the VA rescinded his previous concurrence with the OIG report.  *Id.* at 36.

Fleck then brought this action, alleging that the OIG had violated two provisions of the Privacy Act by disseminating an assertedly deficient report.  Dkt. 1 (Compl.); Dkt. 12 (Am. Compl.); Dkt. 31 (2d Am. Compl.).  After the completion of discovery, the OIG moved for summary judgment, which the Court granted in part and denied in part.  *Fleck*, 596 F. Supp. 3d at 58.  Among other things, the Court granted summary judgment in the OIG's favor with respect to Fleck's claim that the OIG's Privacy Act violation caused him to incur substantial expenses defending against a whistleblower complaint concerning other conduct.  *Id.* at 56.  Fleck's theory

was that the release of the allegedly flawed report prompted the whistleblower to bring her complaint, so those expenses were traceable to the OIG's wrongful conduct. *Id.* He claimed to have evidence to support these allegations, but he did not produce any at summary judgment. *Id.* He apparently withheld the evidence due to a mix of trepidation and confusion: he stated that he had declined to submit the evidence "out of an abundance of caution given the whistleblower complaint." *Id.* Regardless, the Court could not accept his mere say-so at summary judgment, so it granted the OIG's motion as to that category of damages. *Id.* But, recognizing that Fleck maintained that he had evidence, which he assertedly withheld out of a commendable concern for the whistleblower process, the Court informed Fleck that, if he was "able to submit evidence to the Court (even if under seal) that establishes causation in support of his whistleblower claim," he could "seek reconsideration on that ground." *Id.*

**B.      Evidence Offered in Support of Reconsideration**

Fleck has now moved for reconsideration. In support of his motion, he has submitted (under seal) the evidence he referenced but failed to provide at summary judgment, along with certain other materials.

His first exhibit is a June 2019 complaint filed in federal court by a former OGC employee (the "whistleblower") challenging her termination on numerous grounds, including under the Whistleblower Protection Act, 5 U.S.C. § 2302. Dkt. 76-1 at 3 (Pl.'s Sealed Ex. 1). The complaint alleges, among other things, that in late 2017 and early 2018 Fleck improperly hired three attorneys who had previously worked for him in the military. *Id.* at 78–80. The complaint further avers that on April 24, 2018—several weeks after the OIG report was released—the whistleblower sent an email to Fleck's supervisors stating: "[G]iven the OIG report involving the hiring of [Fleck's] wife which I was not aware of until the report was brought to may attention, I am requesting that [OGC] review [the] hiring [by Fleck's division] of

3

three attorneys from the Army to ensure that those positions were properly filled." *Id.* at 82.
And the complaint goes on to allege that "[a]fter receiving no assistance or relief from the VA
OGC leadership," the whistleblower filed a complaint with "the Agency OIG on May 21, 2018"
asserting that "prohibited personnel practices had been committed" in the group into which the
three attorneys were hired. *Id.*

Fleck's second exhibit contains two internal OIG documents. Dkt. 76-1 at 102 (Pl.'s
Sealed Ex. 2). One, dated July 12, 2018, describes a message received on the OIG complaint
hotline referring to certain allegations against Fleck. *Id.* The allegations mirror those the
whistleblower referenced in her civil complaint: that Fleck had improperly hired three former
colleagues from the Department of the Army. *Id.* The other is an October 24, 2018
memorandum from the director of the investigations division of the Office of Accountability and
Whistleblower Protection ("OAWP") to two OAWP investigators, appointing them to investigate
the matter concerning Fleck that had been submitted to the OIG hotline. *Id.* at 105.

In Fleck's view, this evidence supports the conclusion that the release of the allegedly
deficient OIG report caused the whistleblower to report him to the OIG hotline, which prompted
an investigation against him, which in turn required him to spend money defending himself.
Dkt. 76 at 7–9. The theory is something of a bank shot. First, Fleck asserts that the
whistleblower's federal-court complaint establishes that the release of the OIG report prompted
the whistleblower to email Fleck's supervisors about what she perceived to be Fleck's improper
hiring of his former colleagues. *Id.* at 7. Fleck next contends that the complaint and the internal
OIG hotline exhibits establish that (presumably) the same whistleblower pursued the very same
allegations through the OIG hotline process. *Id.* at 7–8. These allegations triggered an
investigation in which the OIG interviewed Fleck, and Fleck spent money retaining counsel for

that interview.  *Id.* at 4; Dkt. 49-12 at 4.  Fleck asks the Court to infer that, just as the release of

the OIG report prompted the whistleblower's April 2018 email, it also prompted her to submit

the OIG hotline complaint.  Dkt. 76 at 7–8.  Based on this chain of events and inferences, Fleck

asserts that the Privacy Act violations the OIG allegedly committed with respect to the OIG

report caused him actual damages relating to this separate whistleblower-prompted investigation.

*Id.*

## II. LEGAL STANDARD

Although Fleck has moved for reconsideration pursuant to Federal Rules of Civil

Procedure 59(e) and 60(b)(6), the OIG correctly notes that the relevant rule is Rule 54(b),

because the Court's March 31, 2022 Order granting partial summary judgment was interlocutory.

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) ("[G]rant[s] of partial summary

judgment . . . are by their terms interlocutory . . . .").  Under Rule 54(b), "[a] district court may

revise its own interlocutory decisions 'at any time before the entry of judgment adjudicating all

the claims and rights and liability of the parties.'"  *Williams v. Savage*, 569 F. Supp. 2d 99, 108

(D.D.C. 2008) (quoting Fed. R. Civ. P. 54(b)).  The standard for reconsidering an interlocutory

decision is "as justice requires."  Fed. R. Civ. P. 60(b) Advisory Comm. Notes (1946); *see also*

*Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000).   This standard "leave[s] a great deal of

room for the court's discretion" and "amounts to determining 'whether reconsideration is

necessary under the relevant circumstances.'"  *Williams*, 569 F. Supp. 2d at 109 (quoting *Corbell*

*v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).  But courts exercise this discretion "subject to

the caveat that where litigants have once battled for the court's decision, they should neither be

required, nor without good reason permitted, to battle for it again."  *Singh v. Geo. Wash. Univ.*,

383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citation and quotation marks omitted).  The

party seeking reconsideration bears the burden of demonstrating that it is warranted.  *Peuschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2012).

The relevant circumstances here turn on Fleck's failure to present evidence at summary judgment because he assertedly believed doing so could be problematic given an ongoing (or possibly ongoing) whistleblower proceeding.  *Fleck*, 596 F. Supp. 3d at 56.  That was a mistake on his part.  The primary piece of evidence that he now invokes is a complaint filed on a public docket in this district; the Court fails to understand why Fleck could not have submitted that public document in opposition to the OIG's motion for summary judgment.  And even if he had been constrained, there is no reason why he could not have filed his evidence under seal, as he has done in support of the instant motion.[1]

Fleck's error, even if baffling, was ostensibly based on good intentions.  This case arrived on the heels of an OIG investigation and report involving allegations of improper personnel practices on Fleck's part as well as a whistleblower investigation and separate civil lawsuit implicating Fleck.  The Court appreciates that this was a fraught context and that the last thing Fleck wanted to do was take any action that could have been construed—even if unfairly so—as interfering with the whistleblower.

Giving Fleck the benefit of the doubt and assuming that his decision to withhold the evidence relating to the whistleblower proceeding was well-intentioned, the Court is prepared to consider the evidence that Fleck mistakenly withheld.  That is to say, the Court will consider revising its grant of summary judgment to the OIG on this issue, but only if it is convinced that summary judgment is no longer appropriate based on Fleck's new evidence and under the usual

---

[1]  Because it is unclear how disclosure of a public filing could cause any harm, Fleck is hereby **ORDERED** to show cause on or before January 20, 2023, why Dkt. 76-1 at 1–100 should not be unsealed.

summary judgment standard. The Court recognizes that this approach gives Fleck a second bite at the apple, something the Court is rarely inclined to provide. But the parties have not already "battled for the court's decision" on this score in the usual sense, because the Court's initial decision was made without the benefit of all of the relevant evidence. *Singh*, 383 F. Supp. 2d at 101.

A party is entitled to summary judgment—or summary judgment redux, as it were—if it can show that there is "no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the litigation under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). The party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party carries this initial burden, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

## III. ANALYSIS

The Court denied summary judgment to the OIG with respect to only one of Fleck's claims—that the OIG violated one provision of the Privacy Act, 5 U.S.C. § 552a(g)(1)(D)—so the Court will consider only that claim here.  *See Fleck*, 596 F. Supp. 3d at 48.

Section 552a(g)(1)(D) permits individuals to sue an agency if that agency "fails to comply with any other provision of [the Privacy Act], or any rule promulgated thereunder, in such a way as to have an adverse effect on [the] individual."  5 U.S.C. § 552a(g)(1)(D).  A § 552a(g)(1)(D) claim therefore requires a predicate violation of another provision of the Act. Fleck alleged violations of several, but the Court denied summary judgment only as to the OIG's alleged violation of § 552a(e)(6).  That subsection provides that:

> [e]ach agency that maintains a system of records shall . . . prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

*Id.* § 552a(e)(6).  Subsection (b)(2), in turn, covers disclosures required under the Freedom of Information Act.  *Id.* § 552a(b)(2).  A plaintiff may recover damages under § 552a(g)(1)(D) only if he proves that (1) the agency's violation of the Privacy Act proximately caused the adverse determination or adverse effect at issue, (2) the agency "acted in a manner [that] was intentional or willful," and (3) the plaintiff suffered "actual damages."  *Id.* § 552a(g)(4); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 37 (D.C. Cir. 1987).

The Court held in its prior opinion that Fleck had "adduced sufficient evidence to create a genuine dispute of material fact as to whether the [OIG] report's omissions violated OIG's obligation [under § 552a(e)(6)] to undertake 'reasonable efforts' to ensure that its report was 'accurate' and 'complete.'"  *Fleck*, 596 F. Supp. 3d at 48 (quoting 5 U.S.C. § 552a(e)(6)).  It also

denied summary judgment as to willfulness, causation, and actual damages related to the expenditures Fleck made challenging his proposed demotion. *Id.* at 53, 57. The only question for today is whether Fleck has also demonstrated a genuine dispute of material fact relating to whether the OIG's statutory violation caused the further expenses that he incurred defending against the whistleblower complaint.[2] That Fleck spent money defending against the whistleblower complaint is not disputed, so the only question is causation.

The OIG offers a battery of arguments on the merits for why the Court should not reconsider its grant of summary judgment on this issue. It contends that the whistleblower's federal-court complaint establishes only that the OIG report prompted her email to Fleck's supervisors. Dkt. 79 at 15. The complaint says nothing, in the OIG's view, about the whistleblower's reasons for submitting the separate OIG hotline complaint, which is what prompted the investigation against which Fleck had to defend. *Id.* The OIG also maintains that, at most, Fleck's evidence could give rise to an inference that the release of the OIG report as a *general matter*—and the concomitant disclosure that Ms. Wiercinski was Fleck's wife and that Fleck had some connection to her hiring—prompted the whistleblower to take the actions she did. *Id.* at 15–16. That is not enough, says the OIG, because Fleck must show that the *Privacy Act violation* caused the whistleblower's actions. *Id.* at 16. The Privacy Act violation related only to the omission of certain mitigating information, and the OIG insists that Fleck has adduced no evidence that the whistleblower "would have acted differently (i.e., would not have submitted the May 2018 OIG hotline complaint) had the alleged mitigating information been part

---

[2] The OIG has separately moved for judgment on the pleadings, arguing that Fleck's § 552a(g)(1)(D) claim (predicated on a violation of § 552a(e)(6)) fails, because it arises from the dissemination of the report within the agency and not to a "person other than an agency," as § 552a(e)(6) provides. Dkt. 84. The Court will address that argument at a later time, after briefing is complete.

of the OIG report." *Id.* at 16; *see also id.* at 18.  Fleck, for his part, replies that the OIG overstates his burden.  Dkt. 80 at 4–5.  He reminds the Court that he is not required to prove his causal claim at this point, only show that there is a factual issue for trial, which he contends he has done.  *Id.* at 5

The Court need not pass on these submissions, because it agrees with a threshold argument the OIG makes: the key piece of evidence that Fleck has submitted—the whistleblower's federal-court complaint—is not competent summary judgment evidence.  Dkt. 79 at 14.  Federal Rule of Civil Procedure 56 makes clear that a litigant can only establish a genuine dispute of material fact through admissible evidence (or evidence that could be converted to admissible evidence at trial).  The rule states that "[a] party asserting that a fact cannot be . . . genuinely disputed" can support such assertion by, among other things, "showing that . . . an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  The rule also provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  And it adds that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Accordingly, although a nonmovant "is not required to produce evidence in a *form* that would be admissible at trial," the evidence she offers must still "be capable of being converted into admissible evidence."  *Glekeln v. Dem. Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  An affidavit or declaration, for example, is permissible summary judgment evidence not because the affidavit or declaration is itself admissible trial evidence but because it is a statement made under penalty of perjury that

provides a substitute for live testimony and can, thus, "be[] converted into admissible evidence." *Id.*

Although Rule 56 speaks of affidavits and declarations, a complaint can at times substitute for these forms of evidence. If a complaint is verified—that is, if the complainant has certified under penalty of perjury that the allegations contained in the complaint are true and correct—it can be treated as an affidavit and therefore as competent evidence to the extent that it otherwise meets the requirements of Rule 56(c)(4). *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992); 28 U.S.C. § 1746. By contrast, allegations made only in an unverified complaint generally cannot defeat summary judgment. *See Celotex*, 477 U.S. at 324 ( "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."); *Grimes v. Dist. of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("[I]t it is well established that [a plaintiff] cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence."); Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2022) ("As is clear by Rule 56(c)'s express requirement that the nonmoving party must support its factual positions, the nonmovant cannot satisfy [its] burden by relying on mere allegations in the pleadings to show that there is a triable issue."). This issue typically arises where a plaintiff wishes to rely on her own unverified complaint in opposing summary judgment, but the principle operates equally when a plaintiff seeks to rely on an unverified complaint from another case—at least when the allegation is offered, as here, for the truth of the matter asserted.

The federal-court complaint that Fleck proffers is not a verified complaint, so it is not competent summary judgment evidence. To be sure, the last page of the complaint contains part

of the language typically used to certify a complaint, asserting: "I declare under penalty of perjury that the foregoing is true and correct."  Dkt. 76-1 at 100 (Pl.'s Sealed Ex. 1).  It then goes on to attest that the complaint is filed in good faith and with sufficient basis for purposes of Federal Rule of Civil Procedure 11.  *Id.*  But this declaration cuts off midway through (indeed, mid-sentence) at the end of the page, and that is the end of the document.  *Id.*  There is no signature page or signature to be found.  And without a signature indicating that the complainant certifies under penalty of perjury that the contents of the complaint are true and correct, the complaint is not verified.  *Neal*, 963 F.2d at 457 (noting that a complaint is verified by complying with 28 U.S.C. § 1746); 28 U.S.C. § 1746 (requiring a signature); *see Verify*, Black's Law Dictionary (10th ed. 2014) ("To confirm or substantiate by oath or affidavit; to swear to the truth of.").  An unsigned partial statement that a complaint is true and correct is the same as no statement at all; until a complainant certifies that she is proceeding under penalty of perjury, she is not so proceeding.

The Court's own review of the docket confirms this conclusion.  Concerned that the absence of a signature page was the result of a clerical error on Fleck's part, the Court located the docket for the whistleblower's lawsuit and reviewed the original version of the complaint that Fleck submitted.  That original, like Fleck's exhibit, lacks a signed declaration verifying the allegations under penalty of perjury.  *Spence v. U.S. Dep't of Vet. Affs.*, No. 19-cv-1947 (D.D.C.), Dkt. 1 at 99.  The docket also includes an amended complaint that is verified, *id.* Dkt. 24-2 at 147–48, but it is of no help to Fleck.  To start, Fleck did not provide the amended complaint to the Court, and it is not the Court's job to search for evidence that the parties might have submitted but did not submit.  But, even if Fleck had submitted it, the amended complaint does not help him, since it differs in material respects from the version of the complaint that

Fleck invokes.  Critically, it does not appear to contain the key paragraph on which Fleck's

motion for reconsideration relies.  *See generally id.* Dkt. 24-2.  The verified complaint mentions

that the whistleblower filed a complaint against Fleck with the OIG, and it separately references

the OIG report regarding the hiring of Fleck's wife.  *Id.* Dkt. 24-2 at 37.   But, unlike the

unverified complaint, it contains no language supporting an inference that the whistleblower's

awareness of the latter prompted her submission of the former.  *Id.*[3]

      None of Fleck's arguments persuade the Court that it can or should consider the

unverified complaint.  He first asserts that the whistleblower "signed her complaint . . . and

included a certification with her federal complaint that she made the allegations 'under penalty of

perjury.'"  Dkt. 80 at 3–4.  As just explained, that is not quite right.  The whistleblower did sign

her complaint, but she did not sign the certification that her allegations were made under penalty

of perjury, or even include a complete certification.  Dkt. 76-1 at 99, 100.  That distinction is

critical.  As a fallback, Fleck suggests that he could call the recipients of the email that the

whistleblower describes in her complaint to testify as to the email's contents "or to their

conversations with the whistleblower for their effect on the listener"—*i.e.* on them.  Dkt. 80 at 4.

Perhaps he could, but that possibility does not suffice for present purposes.  Given a second bite

at the apple, Fleck has not submitted affidavits or declarations from the recipients of the email

about their potential testimony, and supposition regarding what a party could theoretically

question a witness about is not evidence.  If Fleck wanted the Court to consider testimony from

---

[3] It appears that along with this amended complaint the whistleblower submitted an exhibit—a document filed with the Merit Systems Protection Board—that does contain the operative paragraph. *Spence v. U.S. Dep't of Vet. Affs.*, No. 19-cv-1947 (D.D.C.), Dkt. 24-2 at 121. But the Court is not convinced that the whistleblower's verification of the complaint, *id.* Dkt. 24-2 at 147–48, extends to her various exhibits. And, in any event, Fleck provided none of this material to the Court nor has he made any argument related to this amended complaint and the exhibits attached to it.

these individuals, he should have secured that testimony and should have submitted it to the Court.  Nor is the Court persuaded that any such hypothetical testimony would necessarily (or even likely) help Fleck.  The point of the email, as the Court sees it, is to demonstrate the whistleblower's state of mind—her motivation for acting.  The recipients of the email could not speak to that issue, only the whistleblower could, and Fleck has not suggested that he could or would want to call the whistleblower as a witness.

The Court, accordingly, will not consider the whistleblower's unverified complaint for purposes of resolving Fleck's motion for reconsideration.  But without the complaint, there is no evidence that, even considered in the light most favorable to Fleck, supports a reasonable inference that the OIG report's defects caused the whistleblower to file her hotline complaint against Fleck and that, as a result, Fleck incurred expenses defending that separate investigation.  Fleck's other exhibits make no reference to the OIG report.  And although he suggests that the timing of the whistleblower's hotline complaint is itself evidence of causation, the Court is unpersuaded.  The OIG report was released on March 29, 2018, *Fleck*, 596 F. Supp. 3d at 33, and the hotline referral report is dated July 12, 2018, Dkt. 76-1 at 102 (Pl.'s Sealed Ex. 2).[4]  The mere fact that someone—the hotline referral report does not say who—submitted an anonymous complaint about Fleck three-and-a-half-months after the OIG report was released, pertaining to different conduct than that alleged in the OIG report, does not create a genuine dispute of material fact about whether the report caused the referral.  The Court, accordingly, sees no basis to reconsider its prior holding.

---

[4] Although the whistleblower's federal-court complaint alleges that she filed her complaint with the OIG on May 21, 2018, Dkt. 76-1 at 82 (Pl.'s Sealed Ex. 1), for the reasons provided, the Court will not consider that evidence and thus relies only on the information in Fleck's other exhibits.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for reconsideration, Dkt. 76 (sealed); Dkt. 78 (redacted), is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 10, 2023